UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VINCENT PARKS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | 09 C 5683 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| CITY OF CHICAGO and KYLE MINGARI, | ) | |
| | ) | |
| Defendants. | ) | |

## Memorandum Opinion and Order

Plaintiff Vincent Parks, Jr., brought this action under 42 U.S.C. § 1983 and Illinois law against the City of Chicago and Chicago Police Officer Kyle Mingari. Parks' Fourth Amendment unlawful seizure claim has been dismissed by stipulation. Doc. 31 (Pallmeyer, J.). Defendants have moved for summary judgment on the remaining claims: a Fourth Amendment excessive force claim; state law claims for battery, assault, and intentional infliction of emotional distress; and a claim against the City for indemnification of Mingari on the state law claims. Parks concedes that summary judgment is warranted on the emotional distress claim. Doc. 72 at 15. Summary judgment otherwise is denied.

The facts are stated as favorably to Parks as the record permits. Parks was a drug dealer. On June 12, 2009, uniformed officers stopped one of Parks' buyers and found heroin in his possession. Cooperating with the police, the buyer called Parks to (falsely) arrange for a heroin purchase at a certain McDonald's parking lot. Officers Mingari, Bernardo Manjarrez, Arkadiusz Pachnik, and Ted Jozefczak, together with the buyer, proceeded to the McDonald's in an unmarked police car, a marked police car, and the buyer's green Isuzu. Parks entered the

-1-

parking lot in a maroon van and pulled up next to the Isuzu. Upon noticing an unfamiliar person with a walkie-talkie in the Isuzu, Parks concluded that he had been set up, quickly pulled out of the spot, and attempted to flee driving in reverse. Manjarrez followed Parks' van in the unmarked car while Pachnik drove alongside the van in the marked car. The rear of Parks' van collided with Pachnik's car, and then the front of the van collided with Manjarrez's car, resulting in the van being wedged between the two cars.

At some point, Mingari fired three bullets into the van, one of which hit Parks in the shoulder. As Mingari tells it, just before the second collision, he was standing in front of Parks' van when it lunged at him; fearing for his safety, Mingari fired three shots as the van moved towards him. Parks recalls things differently. He "does not dispute that his van may have lunged towards Mingari at some point during the entire incident"; nor does he dispute "that regardless of how any lunging may have come about, he may have been a proximate cause of the lunging and may have been liable for aggravated assault under Illinois law because it occurred while he was trying to escape." Doc. 71 at 14-15. According to Parks, however, Mingari did not fire his shots until the van had come to a complete stop due to its being wedged between the two police cars.

Defendants contend that the § 1983 excessive force claim is barred *Heck v. Humphrey*, 512 U.S. 477 (1994), which precludes a § 1983 claim when "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," unless the conviction or sentence has been set aside by appeal, collateral review, or pardon. *Id*. at 487; *see also Gilbert v. Cook*, 512 F.3d 899, 900 (7th Cir. 2008). In June 2010, Parks pled guilty to three crimes arising from the June 2009 incident at the McDonald's, the important one for present purposes being Class A misdemeanor aggravated assault, 720 ILCS 5/12-2(a)(1). During the plea hearing, the

Assistant State's Attorney stated: "We are asking leave to amend Count 2 to agg assault where the deadly weapon is a vehicle, the victim is Kyle Mingari." Doc. 70-12 at 5-6. The prosecutor recounted the factual basis for the plea as follows:

> Officer Mingari would further testify that he then, while on foot, went into the direction pursuing the maroon van. At that point he was located in front of the maroon van and the unmarked vehicle driven by Officer Manjarrez was located behind him.
>
> He would further testify that as the vehicle driven by the defendant came in his direction, he let off three shots. One that went in the front windshield of the van driven by the defendant and then two from right to left that resulted in the side damage of the passenger vehicle. He did get out of the way, which resulted in an injury, some bruising to his body.

*Id*. at 10-11. Parks' criminal defense attorney "stipulated that all those people would testify to all of those facts." *Id*. at 12. Parks answered "Yes" when the trial judge asked him: "You're pleading guilty because you're guilty, is that right?" *Id*. at 13. In finding a factual basis for and accepting the plea, the trial judge remarked that Parks "made a horrible judgment on his part as a fleeing drug dealer, tried to hit a police officer." *Id*. at 14.

To determine whether *Heck* bars Parks' excessive force claim, the court asks whether the claim, if successful, necessarily would imply the invalidity of the aggravated assault conviction. The governing law is clear: *Heck* does not bar an excessive force claim if the plaintiff, eschewing any challenge to his conviction, proceeds on the theory that the degree of force applied was unreasonable under the circumstances. In *Evans v. Poskon*, 603 F.3d 362 (7th Cir. 2010), the § 1983 plaintiff alleged that he "was beaten mercilessly [by the defendant police officers] both before and after the officers gained custody of him." *Id*. at 363. The Seventh Circuit held that *Heck* barred the plaintiff from pursuing an excessive force claim premised on the theory "that he did not resist being taken into custody," for that theory was "incompatible"

with the plaintiff's resisting arrest conviction. *Id*. at 364. But the court held that *Heck* would not bar the claim if the plaintiff proceeded on the theories "that the police used excessive force to effect custody" and "that the police beat him severely even after reducing him to custody," for those theories would be "entirely consistent" with the conviction. *Ibid*. The Seventh Circuit allowed the plaintiff to pursue his excessive force claim because he was willing to proceed only on the permissible theories. *Ibid*.; *see also Hardrick v. City of Bolingbrook*, 522 F.3d 758, 764 (7th Cir. 2008) ("The fact that Hardrick 'struggled while being handcuffed' at one point in time does not preclude the possibility that at another point in time, Hardrick was 'peaceably waiting to be handcuffed.' Whether a fact-finder would find this scenario plausible is not for us to conclude, but in terms of *Heck*, it is not one that ''necessarily' implies the invalidity of the conviction,' and does not bar Hardrick's excessive force claim."); *Gilbert*, 512 F.3d at 902 ("*Heck* … do[es] not affect litigation about what happens after the crime is completed. Public officials who use force reasonably necessary to subdue an aggressor are not liable on the merits; but *whether* the force was reasonable is a question that may be litigated without transgressing *Heck*.").

Thus, Parks may not pursue his excessive force claim on the theory that his van never lunged at Mingari, or that the particular statute he was convicted of violating does not apply to assaults on police officers, or that the conviction might have been for assaulting somebody other than Mingari. Those theories cannot be reconciled with his conviction, and thus are barred by *Heck*. *See Moore v. Mahone*, __ F.3d __, 2011 WL 2739771, at *3-4 (7th Cir. July 15, 2011) (plaintiff may not pursue excessive force claim premised on allegations that necessarily imply the invalidity of his conviction). But Parks' claim may be pursued on the theory that Mingari shot Parks *after* the van had been completely immobilized upon being wedged between the two

police cars. That theory does not speak to, let alone undermine, the conviction. The conviction is premised on Parks assaulting Mingari with the van, which occurred (in Parks' account) before Mingari fired his shots; it therefore can be true both that Parks assaulted Mingari with the van and that Mingari shot Parks after the van's immobilization.

Like the plaintiff in *Evans*, Parks has expressed his willingness to proceed exclusively on the permitted theories. Parks explains that he "alleges that *after* he resisted arrest and *after* he committed an aggravated assault, excessive force was used against him." Doc. 72 at 10. He likewise notes that he "has not denied that he acted aggressively towards the officers; [rather,] he has simply disputed timing of when the officer acted aggressively towards him." *Id*. at 9-10. *Heck* does not bar an excessive force claim premised on those theories.

Defendants make much of the Assistant State's Attorney's statement at the plea hearing that Mingari would testify "that as the vehicle driven by [Parks] came in his direction, he let off three shots." Doc. 70-12 at 10-11. Defendants assert that because the prosecutor's statement preceded the guilty plea, allowing Parks to maintain that the shots were fired after the van stopped would call the conviction into question. This plainly is incorrect. In pleading guilty, Parks stipulated that he had committed aggravated assault, but no element of that crime turned on when Mingari fired the shots. The conviction would stand whether Mingari fired as the van lunged towards him or whether he fired afterwards; indeed, the conviction would stand if the timing of the shots and their occurrence had not been mentioned during the plea hearing. "Only a claim that 'necessarily' implies the invalidity of a conviction … comes within the scope of *Heck*." *Gilbert*, 512 F.3d at 902. Because Parks' claim, if premised on the notion that Mingari fired after the van became immobilized, would not necessarily imply the invalidity of the aggravated assault conviction, *Heck* does not apply.

Putting aside *Heck*, Defendants also argue for qualified immunity on Parks' excessive force claim. "The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010) (citing *Pearson v. Callahan,* 555 U.S. 223 (2009)). "When confronted with a claim for qualified immunity, [the court] must address two questions: whether the plaintiff's allegations make out a deprivation of a constitutional right, and whether the right was clearly established at the time of defendant's alleged misconduct." *Ibid.*

The first question asks whether, resolving all genuine factual disputes in Parks' favor, Mingari committed excessive force within the meaning of the Fourth Amendment. The answer to that question is yes. Excessive force claims are governed by an objective reasonableness standard. *Ibid.* Instructive here is *Scott v. Edinburg*, 346 F.3d 752 (7th Cir. 2003), where the defendant officer, seeking summary judgment, "contend[ed] that [the plaintiffs' decedent] threatened him with a deadly weapon by trying to back over him with [a car]" and "submit[ted] that this action justified the use of deadly force to protect himself." *Id*. at 757. The Seventh Circuit agreed with the officer that "when an individual threatens a police officer with a deadly weapon, the officer is permitted to use deadly force in self-defense" and that "an automobile may be used as a deadly weapon." *Ibid.* However, noting that "even when an officer faces a situation in which he could justifiably shoot, he does not retain the right to shoot at any time thereafter with impunity," the court held that the legality of employing deadly force ends with the expiration of the threat and that "[i]f the fatal shot was fired while [the decedent] was driving away, then the argument that [the officer] was compelled to fire in order to protect himself would be significantly weakened." *Id*. at 757-58 (internal quotation marks and alterations

omitted).  The court accordingly ruled that because "there is a genuine issue of material fact as to the timing of the first shot," summary judgment on that ground was inappropriate.  *Id*. at 758.

The same result obtains here: because there is a genuine dispute as to whether Mingari shot Parks after his van had become immobilized, a reasonable jury could find that Mingari deployed deadly force after the threat had dissipated, rendering the force objectively unreasonable.  *See Lytle v. Bexar Cnty.*, 560 F.3d 404, 414 (5th Cir. 2009) ("Taking the facts in the light most favorable to the plaintiff, … [the officer] could have had sufficient time to perceive that any threat to him had passed by the time he fired.").

The second question in the qualified immunity analysis is whether the Fourth Amendment right (allegedly) violated by Mingari was clearly established in June 2009, when the shooting occurred.  The answer to that question is yes as well.  Closely analogous case law from before June 2009 clearly established that a police officer may not employ deadly force after the threat to his safety and/or the safety of others has ended.  *See id*. at 413 ("To be sure, the [car] might have posed an immediate and significant threat of harm to [the officer] when it was backing up toward him.  But an exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased."); *Waterman v. Batton*, 393 F.3d 471, 481 (4th Cir. 2005) ("force justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated"); *Scott*, 346 F.3d at 757-58; *Abraham v. Raso*, 183 F.3d 279, 294-95 (3d Cir. 1999) ("Even assuming [the officer] was in front of the car and was in danger at some point, a jury could find, notwithstanding her testimony, that she did not fire until it was no longer objectively reasonable for her to believe she was in peril.  A passing risk to a police officer is not an ongoing license to kill an otherwise unthreatening suspect.  We can, of course, readily imagine circumstances

where a fleeing suspect would have posed such a dire threat to an officer, thereby demonstrating that the suspect posed a serious threat to others, that the officer could justifiably use deadly force to stop the suspect's flight even after the officer escaped harm's way. But in our case, if the jury decides that [the officer] did not fire until safely out of harm's way, the jury could also reasonably decide that [plaintiff's] conduct was not so dangerous as to warrant [the officer's] use of deadly force.") (citations omitted); *Ellis v. Wynalda*, 999 F.2d 243, 246-47 (7th Cir. 1993). Mingari therefore is not entitled to qualified immunity on Parks' § 1983 excessive force claim.

The genuine dispute of fact regarding when Mingari fired his shots also precludes summary judgment on the state law assault and battery claims against Mingari and the state law indemnification claim against the City. In seeking summary judgment, Mingari invokes § 2-202 of the Illinois Local Governmental and Governmental Employees Tort Immunity Act, which provides: "A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202. The Act defines "willful and wanton conduct" as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210. The City claims derivative immunity under § 2-109 of the Act, which provides that it, as a local public entity, cannot be liable if Mingari, its employee, is not liable. 745 ILCS 10/2-109.

Illinois law holds that "a police officer is not guilty of willful or wanton conduct unless he acted with actual or deliberate intention to harm or with an utter indifference to or conscious disregard for the safety of others." *Chelios v. Heavener*, 520 F.3d 678, 693 (7th Cir. 2008) (internal quotation marks omitted). "Although willful and wanton conduct consists of more than mere inadvertence, incompetence, or unskillfulness, it need not be an intentional act; rather, it

-8-

may be an act committed under circumstances exhibiting a reckless disregard for the safety of others." *Ibid.* (internal quotation marks omitted). "Whether an officer acted in such fashion is normally a question of fact to be determined by the jury." *Ibid.* (internal quotation marks omitted). This is a normal case. Accepting Parks' submission that Mingari fired the shots after Parks' van had become immobilized, a reasonable jury could find that Mingari acted either with an actual or deliberate intention to harm or with an utter indifference to or conscious disregard to Parks' safety. *See Quade v. Kaplan*, 2008 WL 905187, at *8, *20 (N.D. Ill. Mar. 31, 2008) (denying argument that § 2-202 of the Tort Immunity Act warranted summary judgment on a state law claim, explaining that there was a genuine dispute regarding whether the plaintiff had attempted to run over a police officer with his car or whether the plaintiff's vehicle posed no danger to the officer at the time the force was applied); *see also Lee v. McNeal*, 2008 WL 4812653, at *3, *7 (N.D. Ill. Oct. 29, 2008) (same where there was genuine dispute regarding whether the plaintiff raised his hands when the officer yelled "freeze" or whether the plaintiff did not comply and continued moving toward the officer); *Uwumarogie v. Vill. of Glen Ellyn*, 2008 WL 2782833, at *1-2, *8 (N.D. Ill. July 15, 2008) (same where there was a genuine dispute regarding whether the plaintiff had fought with the officer before being shot); *Rudolph v. Jones*, 2002 WL 1941360, at *3 (N.D. Ill. Aug. 21, 2002) ("[P]laintiff has provided affidavit and deposition testimony that [the officer] used unreasonable force in shooting him and intentionally kicking him after he was lying on the ground. This is enough to bring the alleged conduct within the wilful and wanton immunity exception."). It follows that summary judgment cannot be granted on the state law assault, battery, and indemnification claims.

For these reasons, Defendants' motion for summary judgment is granted in part (as to the intentional infliction of emotional distress claim) and denied in part (as to the remaining claims).

September 14, 2011

_____
United States District Judge